**[Cite as *State v. Taylor*, 2025-Ohio-5460.]**

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

COREY H. TAYLOR,
AKA CORY H. TAYLOR,

    DEFENDANT-APPELLANT.

CASE NO. 5-25-04

OPINION AND
JUDGMENT ENTRY

Appeal from Hancock County Common Pleas Court
Trial Court No. 2023 CR 371

Judgment Affirmed

Date of Decision: December 8, 2025

APPEARANCES:

    *Samuel Gold* for Appellant

    *Sean M. Abbott* for Appellee

**WALDICK, P.J.**

{¶1} Defendant-appellant, Corey H. Taylor a.k.a. Cory H. Taylor ("Taylor"), appeals the December 9, 2024 judgment of conviction and sentence entered against him in the Hancock County Court of Common Pleas, following a bench trial in which Taylor was found guilty of Possession of Cocaine, a felony of the first degree. For the reasons set forth below, we affirm.

*Procedural History*

{¶2} This case originated on August 22, 2023, when a Hancock County grand jury returned a single-count indictment against Taylor. The indictment charged Taylor with Possession of Cocaine, in an amount equal to or exceeding 27 grams but less than 100 grams, a first-degree felony in violation of R.C. 2925.11(A) and (C)(4)(e).

{¶3} On September 27, 2023, an arraignment was held and Taylor pled not guilty to the charge in the indictment. Nearly thirteen months of pretrial proceedings then ensued.

{¶4} On October 21, 2024, a jury trial was scheduled to begin in the case. However, prior to the commencement of the trial that morning, Taylor waived his right to a jury trial and the matter was then tried to the court. During the course of the one-day trial, the prosecution presented the testimony of three witnesses and introduced six evidentiary exhibits.

{¶5} After the State of Ohio rested its case, Taylor moved for acquittal pursuant to Crim.R. 29, and that motion was overruled by the trial court. Taylor then opted to present no evidence. Following closing arguments of counsel, the trial court recessed the proceedings so that the court could review and consider the evidence and arguments presented.

{¶6} On October 22, 2024, proceedings resumed on the record and the trial court announced that it had found Taylor guilty beyond a reasonable doubt of the charge in the indictment. The trial court ordered a presentence investigation and indicated that a sentencing hearing would be scheduled for a later date.

{¶7} On December 2, 2024, a sentencing hearing was held. The trial court sentenced Taylor to an indefinite prison term of six years minimum mandatory time with a potential maximum of nine years.

{¶8} On December 9, 2024, the trial court journalized its sentencing orders.

{¶9} On January 2, 2025, Taylor filed the instant appeal.

*Summary of Evidence Presented at Trial*

{¶10} During the State of Ohio's case-in-chief at trial, evidence was presented that on August 15, 2023, Officer Paul Frey, a patrolman employed by the City of Findlay Police Department, was working the midnight shift in full uniform and a marked cruiser. At approximately 1:27 a.m., Frey was sitting stationary in his cruiser in the area of the Quality Inn on Interstate Court in Findlay, which is in Hancock County. From his position, Frey observed a Mercury Sable make a ten to

fifteen-minute stop at the hotel. That caught Frey's attention as the police department had received information on multiple occasions that individuals residing at the Quality Inn were engaged in selling illegal drugs, and a short stop at the hotel is consistent with drug trafficking activities. As Frey continued his surveillance, the Mercury left the Quality Inn property and began driving northbound on Northridge Road. Officer Frey pulled in behind the Mercury, at which point the Mercury made a U-turn and began driving southbound on Northridge. During the U-turn, Frey observed that the driver of the Mercury was using a cell phone in violation of Ohio law.

{¶11} After the Mercury made the U-turn, Officer Frey also turned around and again pulled in behind the Mercury. As Frey continued to follow the Mercury, the Mercury changed lanes and made a left turn back toward the hotel. In doing so, the driver of the Mercury failed to signal 100 feet prior to the turn, which is also a traffic law violation. Frey then initiated a traffic stop of the Mercury.

{¶12} After the Mercury pulled over, Officer Frey approached the stopped vehicle on foot. At that time, Taylor was found to be the driver and sole occupant of the Mercury, and Frey began speaking with Taylor about the traffic stop. While Frey was doing so, two other Findlay Police Department officers, Officer Rutter and Officer Atkins, arrived at the traffic stop location. After Frey obtained Taylor's identifying information and communicated that to police dispatch, Frey was advised by dispatch that Taylor's driver's license was suspended, and had been so for

approximately 15 years. Officer Frey continued to speak with Taylor and, based upon Frey's observations, he asked Taylor for consent to search both Taylor's person and the entire vehicle. Taylor granted consent for those searches to Frey, and Frey had Taylor step out of the Mercury. At that time, dispatch advised over the radio that there was an active warrant for Taylor's arrest through Lucas County. Additionally, it was learned that the temporary tag on the Mercury was not registered in Taylor's name but, rather, to a Corey Taylor, Jr., possibly Taylor's son.

{¶13} Officer Frey then performed a search of Taylor's person, during which no drugs or other contraband were located but approximately five hundred dollars in cash was found in Taylor's pocket. While Officer Atkins stood by with Taylor, who had been placed in handcuffs, Officer Frey and Officer Rutter began searching the Mercury. No documents or other items with any type of personal identifying information on them were found inside the vehicle. In the trunk of that vehicle, in addition to some men's clothes and shoes, the officers located a locked bank deposit-type fabric bag and a digital scale inside a backpack. The key to the bank deposit bag was found on Taylor's key ring with the ignition key to the Mercury, attached with a separate key holder. Inside the bank deposit bag, the officers found four separate plastic bags of suspected cocaine, which Officer Frey later field-tested and weighed. Officer Frey testified that, based on his training and experience, the street value of the suspected cocaine located in the Mercury was approximately $3,000.00, give or take a few hundred dollars.

{¶14} The audio-video footage recorded by Officer Frey's and Officer Atkins' body cameras during the traffic stop was admitted into evidence, and portions of that footage were played for the trial court in the courtroom during the trial. The footage from Officer Atkins' body camera reflected that, as Atkins stood speaking with Taylor during the search of the Mercury, Taylor became increasingly agitated and verbally defensive when he observed the other two officers begin to search the trunk area of the Mercury. Additionally, when Officer Frey located and lifted out the locked bank deposit bag found inside the backpack, Frey commented to the other officers that he could feel something inside the bank bag. In response to Frey's comment, Taylor made the unsolicited statement, "No, you cannot." (Tr., 155).

{¶15} After the search of the Mercury was finished and the suspected cocaine seized as evidence, the Mercury was impounded by the officers and Taylor was transported to the police department by Officer Frey for booking.

{¶16} Subsequent to Taylor's arrest, the suspected cocaine was sent to the Ohio Bureau of Criminal Investigation ("BCI") lab for testing. On October 26, 2023, Kristin Canfield, a chemist employed by BCI and an expert in the analysis and identification of controlled substances, weighed and performed chemical testing and instrumental analysis on the contents of the four plastic baggies found in the bank deposit bag in the trunk of the Mercury. The substance in the first baggie weighed 12.13 grams, plus or minus .04 grams, and was found to contain cocaine.

The substance in the second baggie weighed 6.91 grams, plus or minus .04 grams, and was found to contain cocaine. The substance in the third baggie weighed 9.52 grams, plus or minus .04 grams, and was found to contain cocaine. The substance in the fourth baggie weighed 6.98 grams, plus or minus .04 grams, and was found to contain cocaine.

*Assignments of Error Raised on Appeal*

**First Assignment of Error**

**The trial court erred in denying appellant's Criminal Rule 29 motion for an acquittal.**

**Second Assignment of Error**

**The trial verdict of the trial court was against the manifest weight of the evidence.**

**Third Assignment of Error**

**Trial counsel's representation of appellant was ineffective.**

*Analysis of Assignments of Error*

*First and Second Assignments of Error*

{¶17} In the first assignment of error, Taylor argues that his conviction for Possession of Cocaine was not based on sufficient evidence. In the second assignment of error, Taylor argues that his conviction for Possession of Cocaine was against the manifest weight of the evidence. As the first and second assignments of error both require a review of the evidence presented at trial in light of the statutory

elements of the crime at issue, albeit with differing standards of review, we shall jointly address those assignments of error.

{¶18} It is well established that "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, paragraph two of the syllabus (1997).

{¶19} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991). Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "'In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact.'" *State v. Williams*, 2024-Ohio 2307, ¶ 21 (3d Dist.), quoting *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.).

{¶20} By contrast, when determining whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, *supra*, at 387. In doing so, an appellate court must review the entire record, weigh the evidence and all

reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* Nevertheless, when assessing a manifest-weight challenge, a reviewing court must still allow the trier-of-fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. Stewart*, 2023-Ohio-253, ¶ 11 (3d Dist.), citing *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

**{¶21}** In the instant case, Taylor was convicted of Possession of Cocaine in violation of R.C. 2925.11(A), which provides in relevant part that "[n]o person shall knowingly * * * possess * * * a controlled substance * * *." The indictment further alleged, and the trial court found beyond a reasonable doubt, that the controlled substance possessed by Taylor was cocaine, in a weight equal to or exceeding 27 grams.

**{¶22}** On appeal, Taylor argues in the first assignment of error that the evidence at trial was insufficient to prove that he knowingly possessed the cocaine at issue. Similarly, in the second assignment of error, Taylor asserts that his

conviction was against the manifest weight of the evidence as to the issue of whether he knowingly possessed the cocaine.

{¶23} R.C. 2901.22(B) defines the culpable mental state of "knowingly", and provides:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶24} "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "The issue of whether a person charged with drug possession knowingly possessed a controlled substance 'is to be determined from all the attendant facts and circumstances available.'" *State v. Brooks*, 2012-Ohio-5235, ¶ 45 (3d Dist.), quoting *State v. Teamer*, 82 Ohio St.3d 490, 492 (1998).

{¶25} "Possession of drugs can be either actual or constructive." *State v. Bustamante*, 2013-Ohio-4975, ¶ 25 (3d Dist.). "A person has 'constructive possession' if he is able to exercise dominion and control over an item, even if the individual does not have immediate physical possession of it." *Id.*, citing *State v. Hankerson*, 70 Ohio St.2d 87, syllabus (1982). "For constructive possession to

exist, '[i]t must also be shown that the person was conscious of the presence of the object.'" *Id.*, quoting *Hankerson* at 91.

**{¶26}** "'Although a defendant's mere proximity to drugs is in itself insufficient to establish constructive possession, proximity to the drugs may constitute some evidence of constructive possession.'" *State v. McClain*, 2020-Ohio-1436, ¶ 46 (3d Dist.), quoting *State v. Brown*, 2009-Ohio-5390, ¶ 20 (4th Dist.). "'Therefore, presence in the vicinity of contraband, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession.'" *Id.*

**{¶27}** Finally, "'the State may prove * * * constructive possession of contraband by circumstantial evidence alone.'" *McClain*, at ¶ 45, quoting *Bustamante*, *supra*, at ¶ 25.

**{¶28}** In the instant case, this Court's review of the record leads us to conclude that the evidence at trial was sufficient to prove that Taylor knowingly possessed the cocaine at issue.

**{¶29}** Such evidence of knowing possession included, but was not limited to, the fact that Taylor was the driver and sole occupant of the car in which the cocaine was being transported, and the key to the locked bag containing the cocaine was in Taylor's immediate possession. The car driven by Taylor made a brief stop at the hotel in the very early morning hours, consistent with drug trafficking activity, and approximately five hundred dollars in cash was found in Taylor's pocket just

after his visit to the hotel. After Taylor drove away from the hotel, he then made a U-turn immediately after a marked police cruiser pulled in behind him, making it reasonable to infer that Taylor was trying to avoid the police. Additionally, there was evidence presented that the cocaine in the Mercury was worth approximately $3,000.00, information upon which a trier of fact could conclude that it was unlikely that the cocaine had been left in the trunk by a person other than Taylor. During the search of the Mercury, Taylor became visibly agitated when he observed the police officers beginning to search the trunk area where the cocaine was ultimately found, and he then made an unsolicited comment about the unopened bank bag containing the cocaine, falsely trying to suggest that the bag was empty.

{¶30} Upon the evidence presented, a trier of fact could reasonably conclude that Taylor was conscious of the presence of the cocaine and that, as the driver and sole occupant of the car in which the cocaine was located, he exercised dominion and control over the cocaine. Particularly when examining the evidence in a light most favorable to the prosecution, we conclude that the State of Ohio produced sufficient evidence to support Taylor's conviction. The first assignment of error is therefore overruled.

{¶31} In support of the manifest-weight claim raised in the second assignment of error, Taylor argues that trial testimony given by Officer Jacob Atkins concerning a prior tip received by Atkins about Taylor engaging in drug activity

was uncorroborated and therefore was not reliable evidence to support Taylor's conviction.

{¶32} With regard to this issue, the trial record reflects that during the cross-examination of Officer Frey, who was the state's first witness, defense counsel raised the issue of whether Officer Atkins had commented at the scene of the traffic stop that he had received information that Taylor would be carrying cocaine in a bag such as the one officers located in the trunk of the Mercury. Officer Frey testified that, based on the footage of his body camera, it did sound like Officer Atkins had made such a comment. However, in response to additional questioning by defense counsel about information Atkins may have had, Frey testified that no communication from Atkins about any such tip or information concerning Taylor had been passed on to Frey prior to Frey stopping Taylor on the night in question. Then, later in the trial, Officer Atkins testified that he had indeed received a prior tip about Taylor transporting narcotics, but Atkins could not recall when he had received that information or who it was that had passed that information along to him.

{¶33} On appeal, Taylor argues that the vague and uncorroborated testimony given by Officer Atkins about the tip concerning Taylor serves to render the conviction in this case against the manifest weight of the evidence. We disagree.

{¶34} As to the relevance and weight, if any, to be given the testimony about the tip received by Atkins, we note that the trial court was able to see, hear, and

evaluate both Frey's and Atkins' testimony and was free to believe or disbelieve any or all of that testimony. *State v. Williams*, 2024-Ohio-2307, ¶ 27 (3d Dist.), citing *State v. Shockey*, 2024-Ohio-296, ¶ 24 (3d Dist.).  More importantly, upon reviewing Atkins' testimony, this Court finds that no aspect of that testimony – if believed – served to call into question, much less outweigh, all of the evidence outlined above that proved Taylor's knowing possession of the cocaine found in the car he was operating.

**{¶35}** In summary, following this Court's independent review of the record and weighing of the evidence and all reasonable inferences therefrom, we conclude that this is not the exceptional case where the evidence weighed heavily against conviction, nor is there any indication that the trial court lost its way in finding Taylor guilty of Possession of Cocaine.  Accordingly, the second assignment of error is also overruled.

*Third Assignment of Error*

**{¶36}** In the third assignment of error, Taylor argues that he was denied the effective assistance of counsel.

**{¶37}** "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 2006-Ohio-6679, ¶ 62.  To prove ineffective assistance of counsel in a criminal case, the defendant-appellant must establish that: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Counsel's

-14-

performance is deficient if it falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136, paragraph two of the syllabus (1989). Prejudice exists if there is "a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different." *State v. Sowell*, 2016-Ohio-8025, ¶ 138.

**{¶38}** In the instant case, Taylor first asserts that his trial counsel failed to meet with him more than once prior to the trial and that counsel did not otherwise effectively communicate with Taylor while the case was pending. However, "'[a] claim of ineffective assistance of counsel in a direct appeal must be established by the evidence in the record.'" *State v. Thompson*, 2021-Ohio-2979, ¶ 12 (3d Dist.), quoting *State v. Carter*, 2017-Ohio-7501, ¶ 78 (7th Dist.). "'When an allegation of ineffective assistance of counsel is based upon material that is not part of the record, the merits of the argument cannot be addressed.'" *Id.*, quoting *State v. Barnett*, 2008-Ohio-1546, ¶ 130 (7th Dist.).

**{¶39}** As the initial claim raised by Taylor relating to his counsel's effectiveness relies solely on factual matters outside the record, this Court is unable to consider it on direct appeal.

**{¶40}** Taylor also asserts that his counsel was ineffective because counsel did not file a motion to suppress challenging the basis of the traffic stop that resulted in law enforcement finding the cocaine in the trunk of the vehicle driven by Taylor. Taylor asserts that the stop was a pretext so that Officer Frey could investigate his

belief that Taylor was engaged in drug activities, and Taylor argues that Frey did not have a sufficient basis to believe that Taylor was engaged in transporting narcotics.

{¶41} Our analysis of this claim begins by noting that the "'[f]ailure to file a suppression motion does not constitute per se ineffective assistance of counsel.'" *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000), quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). "It is counsel's duty to make his own appraisal of the case and to decide when such motions are worth filing." *State v. Wilson*, 2001 WL 980810, *2 (3d Dist. Aug. 24, 2001). There must also be a reasonable probability that the motion would have been successful. *State v. Wilkins*, 2002-Ohio-4234, ¶ 7 (3d Dist). If the defendant-appellant fails to demonstrate a reasonable probability that the proposed motion would have been granted, counsel is presumed to have been effective since the filing of the motion would have been a "futile act," which the law does not require counsel to undertake. *State v. Hahn*, 2021-Ohio-3789, ¶ 14 (3d Dist.).

{¶42} Finally, as this Court noted when analyzing a similar claim of ineffective counsel in *State v. Harris*, 2021-Ohio-4559 (3d Dist.), "'[t]here are two types of valid traffic stops: (1) where police have probable cause that a traffic violation has occurred or was occurring and (2) where police have reasonable articulable suspicion that criminal activity has occurred.'" *Id*., at ¶ 14, quoting *State v. McMillon*, 2019-Ohio-2716, ¶ 11 (7th Dist.).

-16-

**{¶43}** In the instant case, the record is devoid of any evidence, testimonial or otherwise, that would substantiate the ineffective assistance of counsel claim raised by Taylor with regard to the fact that a motion to suppress was not filed to challenge the basis of the traffic stop. On the contrary, the trial record reflects that Officer Frey, the patrolman who made the traffic stop at issue, testified that he witnessed two separate traffic violations prior to initiating the stop. First, Frey observed that Taylor was using a cell phone while driving the vehicle, in violation of Ohio law, and then Taylor failed to use a turn signal 100 feet prior to making a turn, also a traffic law violation. On the basis of those two violations, Officer Frey then initiated the traffic stop of the vehicle driven by Taylor. The fact that Frey may have also suspected that drug activity was afoot and sought to stop Taylor's vehicle to investigate such suspicions does not impact the constitutional propriety of the traffic stop when a valid legal basis for the stop existed. *Dayton v. Erickson*, 76 Ohio St.3d 3, syllabus (1996) ("Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity.").

**{¶44}** Thus, on the basis of the information contained within the record before us, Taylor has failed to make the requisite showings with regard to his claim of ineffective assistance of counsel, and the third assignment of error is overruled.

*Conclusion*

{¶45} Having found no error prejudicial to the defendant-appellant, Corey Taylor a.k.a. Cory Taylor, in the particulars assigned and argued, the judgment of conviction and sentence entered in the Hancock County Court of Common Pleas is affirmed.

***Judgment affirmed***

**ZIMMERMAN and WILLAMOWSKI, J.J., concur.**

Case No. 5-25-04

# **JUDGMENT ENTRY**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

Juergen A. Waldick, Judge

William R. Zimmerman, Judge

John R. Willamowski, Judge

DATED:
/jlm