[Cite as *In re Predmore*, 187 Ohio App.3d 100, 2010-Ohio-1626.]

## IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### LOGAN COUNTY

IN RE PREDMORE,

        APPELLANT. (Three cases.)

CASE NO. 8-09-03
8-09-04, and 8-09-05

**O P I N I O N**

Appeal from Logan County Common Pleas Court,
Juvenile Division
Trial Court No. 08-JD-0010

Judgment Reversed and Cause Remanded in Case No. 8-09-03
Judgments Affirmed in Case Nos. 8-09-04 and 8-09-05

Date of Decision: April 12, 2010

**APPEARANCES:**

Elizabeth R. Miller, for appellant.
Deborah K. Wolf, for appellee.

**ROGERS, Judge.**

{¶1} Appellant, Cody Predmore, appeals the judgment of the Court of Common Pleas of Logan County, Domestic Relations-Juvenile-Probate Division, adjudicating him a delinquent child and ordering him to serve a six-month minimum commitment at the Department of Youth Services ("DYS") and two 90-day commitments at the Juvenile Detention Center ("JDC"), suspended on the condition that he comply with all court orders upon his release from DYS.

Additionally, Predmore appeals the judgment of the Court of Common Pleas of Marion County, Domestic Relations-Juvenile-Probate Division, adjudicating him a delinquent child. In this consolidated appeal, Predmore contends that the trial court violated his right to counsel and to due process; that his admission to delinquency was not knowing, intelligent, and voluntary; that the trial court erred in failing to appoint him a guardian ad litem; that the trial court violated his right to due process when it adjudicated him delinquent of burglary absent proof of every element of the charge against him by sufficient, competent, and credible evidence; and that he was denied effective assistance of counsel. Based upon the following, we affirm Predmore's adjudication as a delinquent child for burglary and six-month minimum commitment to DYS and his adjudication as a delinquent child for illegal possession of drug paraphernalia and one 90-day commitment to JDC, but we reverse his adjudication as a delinquent child for petty theft and the other 90-day commitment to JDC.

## I.     *Case No. 8-09-04*

**{¶2}**   In October 2007, in case No. 8-09-04,[1] the Court of Common Pleas of Marion County, Domestic Relations-Juvenile-Probate Division ("Marion County court"), held a detention hearing pursuant to Juv.R. 7. The hearing arose from the Marion County police department's filing of a complaint alleging that

---

[1] Case No. 8-09-04 corresponds to the Court of Common Pleas of Marion County, Domestic Relations-Juvenile-Probate Division, case No. 07 DL 1123 and the Court of Common Pleas of Logan County, Domestic Relations-Juvenile-Probate Division, case No. 08JD0001.

Predmore was a delinquent on one count of illegal possession of drug paraphernalia in violation of R.C. 2925.14(C)(1), a misdemeanor of the fourth degree if committed by an adult. The complaint related to an incident during which police discovered a marijuana bong in a vehicle in which Predmore had been riding.

{¶3} At the hearing, Predmore and his father, Daniel Predmore, signed a record of statement of rights that stated "We, _____ and <u>Dan</u>, Parents, and Cody Predmore hereby acknowledge being advised of the foregoing items. We wish to: ___ 1) Talk to an Attorney before going further. ___ 2) I am presently represented by _____. ___ 3) We wish t[sic] have an Attorney appointed by the Court. ___ 4) We, _____ and _____ and Cody Predmore having been advised of our right to legal counsel on this 23rd day of October 2007, and (do) or (do not) desire the services of an Attorney, and (do) or (do not) knowingly waive the same." None of the blanks were completed or checked to indicate Predmore's and his father's preferences regarding counsel.

{¶4} In December 2007, the Marion County court transferred the case to the Court of Common Pleas of Logan County, Domestic Relations-Juvenile-Probate Division ("Logan County court").

{¶5} In January 2008, the case came before the Logan County court for an initial hearing. Prior to the hearing, Predmore and his father signed a form that

enumerated the rights available upon denial of the offense: the right to an attorney, right to request an attorney at any stage in the proceedings, the right to remain silent, the right to court-appointed counsel when indigent, the right to cross-examine the state's witnesses, and the right to subpoena witnesses to testify on one's behalf. Additionally, Predmore indicated on the form that he denied the allegation.

{¶6} In March 2008, the Logan County court transferred the case to the Marion County court for adjudication.

{¶7} In July 2008, the Marion County court held a hearing,[2] during which Predmore and his father signed another form entitled "Record of Statement of Rights," which advised them that, among other things, he had a right to appointed counsel. The form reflected that the magistrate had read Predmore the statement of rights. However, the boxes reflecting elections pertaining to counsel were unchecked. Thereafter, the Marion County Court filed a judgment entry reflecting that Predmore had waived counsel and admitted to illegal use or possession of drug paraphernalia, a misdemeanor of the fourth degree if committed by an adult.

---

[2] Predmore submitted to this court what purported to be a transcript of the July 17, 2008 hearing. However, this transcript was not certified by an appointed official court reporter nor does it otherwise comport with the requirements of App.R. 9, and therefore, this court may not consider it. See *Flatt v. Atwood Manor Nursing Ctr.*, 3d Dist. No. 3-06-26, 2007-Ohio-5387, ¶ 35, fn. 3; *Norwest Bank Minnesota, N.A. v. Saunders*, 6th Dist. No. E-03-007, 2003-Ohio-6967; *CitiFinancial, Inc. v. Budzik*, 9th Dist. No. 02CA008155, 2003-Ohio-4149.

Additionally, the trial court transferred the case back to Logan County for disposition.

{¶8} In August 2008, the Logan County court, at a combined hearing for case Nos. 8-09-04, 8-09-03, and 8-09-05, held the dispositional hearing in case No. 8-09-04. However, the trial court elected to continue disposition of case No. 8-09-04 until December 2008 for a combined dispositional hearing for all three cases.

{¶9} In December 2008, the case proceeded to the dispositional hearing on all three cases. In case No. 8-09-04, the trial court ordered Predmore to serve a 90-day term in JDC, suspended on the condition that he "compl[y] with all orders of the court upon his release from the ODYS."

## II. Case No. 8-09-03

{¶10} In January 2008, in case No. 8-09-03,[3] the Logan County police department filed a complaint alleging that Predmore was a delinquent on one count of petty theft in violation of R.C. 2913.02(A)(1), a misdemeanor of the first degree if committed by an adult. The complaint arose from an incident during which Predmore allegedly took a DVD player and speakers from his mother's home and attempted to sell them to a neighbor. Thereafter, at the initial hearing on the complaint, Predmore and his father signed a form advising them in part:

---

[3] Case No. 8-09-03 corresponds to the Court of Common Pleas of Logan County, Domestic Relations-Juvenile-Probate Division, case No. 08JD10.

> The young person has a right to an attorney, the right to request an attorney at any stage of the proceedings, the right to remain silent, the right to court appointed counsel in appropriate cases where indigent, the right to cross-examine the prosecutor's witnesses, in addition to the right to subpoena witnesses of their own to testify on their behalf. Upon request, the juvenile also has a right to a record of all proceedings at public expense, if indigent * * *

Additionally, Predmore indicated on the form that he denied that the allegations made were true.

{¶11} In August 2008, at the combined hearing, the trial court held the adjudicatory hearing in case No. 8-09-03.

{¶12} Virginia Gammell, Predmore's mother, testified that her surround sound and DVD player were missing; that a family friend in the home mentioned he had seen Predmore leave the home with "something silver"; that she never gave Predmore permission to remove the items from the home; and that she contacted law-enforcement officers, who recovered the property from an adjacent apartment. Officer Jason Lapp of the Bellefontaine police department testified that he investigated the incident and the neighbor informed him that Predmore had attempted to sell him the equipment missing from Gammell's home.

{¶13} After the close of testimony, the trial court found that Predmore was guilty beyond a reasonable doubt of petty theft in violation of R.C. 2913.02(A)(1), a misdemeanor of the first degree if committed by an adult, and adjudicated him a delinquent child.

{¶14} In December 2008, at the combined dispositional hearing, the trial court ordered Predmore to serve a 90-day term in JDC, suspended on the condition that he comply with "all orders of the court upon his release from the ODYS."

### III. Case No. 8-09-05

{¶15} In June 2008, in case No. 8-09-05,[4] the Logan County Police Department filed a complaint alleging that Predmore was delinquent on one count of burglary in violation of R.C. 2911.12(A)(4), a felony of the fourth degree if committed by an adult. The complaint arose from an incident during which Predmore allegedly entered an elderly woman's home without her permission.

{¶16} In August 2008, at the combined hearing, the trial court held the initial hearing in case No. 8-09-05. The trial court addressed case No. 8-09-05 first, engaging in the following colloquy with Predmore and his father:

> THE COURT: All right. Let's deal with the initial appearance first. Do you understand your rights?
>
> [PREDMORE]: Yes, sir.
>
> THE COURT: Did anybody discuss those with you?
>
> [PREDMORE]: Yes, sir.
>
> THE COURT: Tell me what you believe your rights are.
>
> [PREDMORE]: I have the right to speak, get an attorney.

---

[4] Case No. 8-09-05 corresponds to the Court of Common Pleas of Logan County, Domestic Relations-Juvenile-Probate Division, case No. 08JD144.

THE COURT: Okay. At an initial appearance, your Rule 5 rights include, among other things, that you will be advised of the nature of the charge against you. * * * You have the right to an attorney, and you have a right for a reasonable continuance in the proceedings to secure counsel. And pursuant to Criminal Rule 4, you have a right to have counsel assigned to you without cost if you're unable to employ counsel. You, further, have a right to make no statement, and any statement made may be used against you. Two other provisions of Rule 5 if you are an adult that would apply would be the requirement of a preliminary hearing * * * and, further, you would have a right in the adult court to a jury trial. * * * Do you have any questions about those rights?

[PREDMORE]: No, sir.

* * *

THE COURT: You have both your mom and dad here?

[PREDMORE]: Yes, sir.
* * *
THE COURT: * * * All right. Do you understand your rights to counsel in this case?

[PREDMORE]: Yes, sir.

THE COURT: What do [sic] wish to do with regard to the attorney?

[PREDMORE]: I don't understand what you're saying.

THE COURT: Statute gives you a right to have counsel involved. This is a serious felony, or would be a felony. Have you had any discussion with your dad or your mother about that?

[PREDMORE]: No, sir.

THE COURT: Dad, do you have any thoughts?

[DANIEL PREDMORE]: I never knew all of this was going on until he came to live with me, and that's when all these cases started coming left and right. * * *

THE COURT: Okay. Do you understand the rights that I read to [Predmore]?

[DANIEL PREDMORE]: Yeah.

THE COURT: Do you have any thoughts about those rights?

[DANIEL PREDMORE]: I think he ought to get him an attorney because I don't know what's really going on, like I said.

Thereafter, the trial court appointed counsel for Predmore in case No. 8-09-05.

{¶17} In November 2008, the trial court held the adjudicatory hearing, at which Henrietta Kennedy, the victim, testified that she was 90 years old; that she lived in the same neighborhood as Predmore; that in April 2008, she was working in her yard when Predmore approached her and asked if he could have an old bench in her yard; that even though she did not know Predmore at that time, she told him he could have the bench. Several days later, he returned and asked if he could do some yard work for her. While he worked in her yard, she loaded trash cans into the trunk of her car so that she could drive them from the back of her home, around the block, and set them on the curb. She always did this because she could not physically carry the cans to the curb; the process took her approximately ten to 15 minutes. When she returned and entered her home, she was startled because Predmore was in the home and walking down the stairs from

the second floor. She asked him what he was doing in her home, and he responded by telling her he did not take anything and turned his pockets inside out to show her they were empty. He then told her he was using the restroom, even though his home was nearby. Predmore went out the back door and finished the yard work, and she wrote him a check for the work. She did not call the police because she was very startled and frightened. Approximately five to six months later, Predmore came to her home with a puppy and asked her if it belonged to her, and then came back several days later to ask about more yard work. She told her son about the incident, and he called the police. She never invited Predmore into her home or called him to work for her. Kennedy continued that she had not noticed anything missing from her home since the incident; she never invited people who work in her yard into her home; the restroom in her home is on the second floor; and Predmore would have no way of knowing where it was because she did not tell him.

{¶18} Officer Neill Rhodes of the Bellefontaine police department testified that he investigated the incident at Kennedy's home. Kennedy reported to him that she had told Predmore he could do some yard work for her, she had taken her trash around to the curb, and when she returned, Predmore was in her home coming down the steps from the second floor. He interviewed Predmore, who stated that he was there doing some work and Kennedy invited him into her

kitchen to receive his check. Predmore also told him that Kennedy had approached him numerous times to employ him after the incident. Rhodes testified that Kennedy's home did not look ransacked but that Kennedy's home was so large, he did not believe Predmore would have had time to go through the home to know what to take.

{¶19} Predmore testified in his own defense that in April 2008, he approached Kennedy and asked if she needed help with her yard work. Kennedy agreed and, upon completion of the work, Kennedy gave him a check in the breezeway between her home and garage. Predmore stated that Kennedy approached him several times about doing yard work for her and that she also took a wooden bench from her yard and put it in his backyard, even though he did not ask her for it. He did not see her move the bench but assumed that she did. He stated that his father's home, where he lived at the time, was only "a little alleyway" away from Kennedy's house. Predmore testified that he was on probation for being an unruly child related to a theft offense, he was an honest and truthful person, and he had stolen from his mother.

{¶20} Thereafter, the trial court found Predmore guilty[5] beyond a reasonable doubt of burglary in violation of R.C. 2911.12(A)(4), a felony of the fourth degree if committed by an adult, and adjudicated him a delinquent child.

{¶21} In December 2008, at the combined dispositional hearing, the trial court ordered Predmore to serve a minimum six-month term at DYS, not to exceed his 21st birthday.

*IV. Appeal*

{¶22} In January 2009, Predmore appealed from his adjudication and disposition in case Nos. 8-09-03, 8-09-04, and 8-09-05.

{¶23} In March 2009, this court consolidated case Nos. 8-09-04 and 8-09-05 with case No. 8-09-03.

{¶24} In April 2009, Predmore filed a motion to supplement the appellate record with additional transcripts of the pleadings, specifically, the transcripts of the adjudicatory hearings in Marion County in July 2008, in Logan County in August 2008, and in Logan County in November 2008, which this court granted.

{¶25} It is from the trial court's December 2008 adjudication and disposition that Predmore appeals, presenting the following assignments of error for our review.

---

[5] Although the trial court used the term "guilty" in its judgment entry, a juvenile court does not make a finding of guilty but determines the issues and renders an adjudication of delinquency. Nevertheless, the standard of proof used by the trial court was correct. See Juv.R. 29(E)(4).

*Assignment of Error No. I*

The trial court violated Cody P.'s right to counsel and to due process under the Fifth and Fourteenth Amendments to the United States Constitution, Section 16, Article I of the Ohio Constitution, Ohio Revised Code Section 2151.352, and Juvenile Rules 3, 4, and 29. (July 17, 2008 T. pp. 2-5); (August 25, 2008, T. pp. 3-31).

*Assignment of Error No. II*

Cody P.'s admission to his delinquency charge was not knowing, intelligent, and voluntary in violation of the Fifth and Fourteenth Amendments to the United States Constitution, Article I, Sections 10 and 16 of the Ohio Constitution, and Juvenile Rule 29. (July 17, 2008, T. pp. 2-5).

*Assignment of Error No. III*

The trial court committed plain error when it failed to appoint a guardian ad litem for Cody P. in violation of Ohio Revised Code Section 2151.281(a) and Juvenile Rule 4(B). (July 17, 2008, T. pp. 2-5); (August 25, 2008, T. pp. 3-31).

*Assignment of Error No. IV*

The trial court violated Cody P.'s right to due process under the Fifth and Fourteenth Amendments to the United States Constitution, Article I, Section 16 of the Ohio Constitution, and Juvenile Rule 29(E)(4) when it adjudicated him delinquent of burglary absent proof of every element of the charge against him by sufficient, competent, and credible evidence. (November 3, 2008, T. pp. 44-47).

*Assignment of Error No. V*

Cody P. was denied the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution. (November 3, 2008, T. p. 27).

{¶26} For ease of discussion, we elect to address Predmore's second and third assignments of error together.

*Assignment of Error No. I*

{¶27} In his first assignment of error, Predmore contends that both the Marion and Logan county courts violated his right to counsel and to due process. Specifically, Predmore argues that both the Marion and Logan county courts violated his right to counsel because they failed to appoint him counsel even though he was not counseled or advised by his parent or attorney, the Marion County court failed to obtain a proper written waiver of counsel, the Logan County court did not warn him of the dangers of self-representation before allowing him to represent himself, and neither court obtained a knowing, intelligent, and voluntary waiver under Juv.R. 29.

{¶28} The Supreme Court of Ohio has acknowledged that juveniles have a right to the assistance of counsel in delinquency proceedings. *In re Haggard*, 3d Dist. Nos. 2-08-20, 2-08-21, 2-08-22, and 2-08-23, 2009-Ohio-3821, ¶ 25, citing *In re Anderson* (2001), 92 Ohio St.3d 63, 66, citing *In re Gault* (1967), 387 U.S. 1, 31-57. Additionally, Juv.R. 4(A) provides that "[e]very party shall have the right to be represented by counsel." Further, R.C. 2151.352 codifies the juvenile's right to counsel, providing:

> A child * * * is entitled to representation by legal counsel at all stages of the proceedings under this chapter or Chapter 2152. of

the Revised Code. * * * If a party appears without counsel, the court shall ascertain whether the party knows of the party's right to counsel and of the party's right to be provided with counsel if the party is an indigent person. The court may continue the case to enable a party to obtain counsel, to be represented by the county public defender or the joint county public defender, or to be appointed counsel upon request pursuant to Chapter 120. of the Revised Code. Counsel must be provided for a child not represented by the child's parent, guardian, or custodian. If the interests of two or more such parties conflict, separate counsel shall be provided for each of them.

{¶29} Recently, the Supreme Court of Ohio thoroughly discussed juveniles' right to counsel and waiver in *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, observing that R.C. 2151.352 "[r]eflects the General Assembly's understanding that *Gault* held that the juvenile may waive his rights, including his right to counsel, * * * and that it codifies that right of waiver but only if the juvenile is advised by a parent in considering waiver." *In re C.S.* at ¶ 95. The court continued that a juvenile's waiver of his right to counsel must be voluntary, knowing, and intelligent, and that there is a strong presumption against waiver of the right to counsel. Id. at ¶ 105-106, citing *State v. Gibson* (1976), 45 Ohio St.2d 366. In making the determination whether waiver was voluntary, knowing, and intelligent, the court directed appellate courts to apply a totality-of-the-circumstances test. *In re Haggard*, 2009-Ohio-3821, at ¶ 29, citing *In re C.S.* at ¶ 108. In applying the test, "[t]he judge must consider a number of factors and circumstances, including the age, intelligence, and education of the juvenile; the juvenile's background and experience generally and in the court system

specifically; the presence or absence of the juvenile's parent, guardian, or custodian; the language used by the court in describing the juvenile's rights; the juvenile's conduct; the juvenile's emotional stability; and the complexity of the proceedings." *In re C.S.* at ¶ 108, citing *In re Dalton S.* (2007), 273 Neb. 504, 514, 730 N.W.2d 816. Additionally, the Supreme Court noted that an important factor in the test is "the degree to which the juvenile's parent is capable of assisting and willing to assist the juvenile in the waiver analysis." Id. at ¶ 110, citing *Huff v. K.P.* (N.D.1981), 302 N.W.2d 779, 782.

{¶30} Concerning written waivers of counsel, the Supreme Court of Ohio has held that when "a juvenile is charged with a serious offense, the waiver of the right to counsel must be made in open court, recorded, and in writing." *In re C.S.* at ¶ 109. Finally, the Supreme Court has defined "serious offense" as an offense carrying a penalty of confinement for more than six months. *In re Ramon*, 3d Dist. No. 4-07-03, 2007-Ohio-5768, ¶ 14, citing *State v. Brooke*, 113 Ohio St.3d 199, 2007-Ohio-1533, paragraph two of the syllabus. Further, the court held that "[i]f a written waiver has been executed, the juvenile court judge must consider the form used and the juvenile's literacy level to ensure that the juvenile has an intelligent understanding of the document and an appreciation of the gravity of signing it." *In re C.S.* at ¶ 109, citing, e.g., *In re Shane* (Jan. 26, 2001), 2d Dist. No. 1523, 2001 WL 62550.

**{¶31}** Additionally, the Twelfth Appellate District has found that a trial court failed to comply with Juv.R. 29(B)(3) in determining whether a juvenile waived his right to counsel when he signed a rights form, but provided incomplete and inaccurate responses to questions on the form concerning his right to counsel, and the trial court did not go over the information, questions, and responses set forth in the form to ensure the juvenile's understanding of the proceedings. *In re M.T.*, 12th Dist. No. CA 2006-04-018, 2007-Ohio-2446.

**{¶32}** Here, Predmore first argues that in case No. 8-09-04, the Marion County court erred in failing to appoint him counsel because the transcript demonstrates that he was not advised or counseled by his father regarding his decision to waive counsel, the trial court did not comply with Juv.R. 29(B)(1) through (5) before permitting him to proceed without counsel, the waiver-of-counsel form that he executed was not fully completed, and the trial court did not discuss the form with him. The state responds that Predmore and his father were aware of his right to counsel through a notification contained in the summons on the complaint with which they were served and a record of statement of right that they executed in the Marion County court.

**{¶33}** Initially, we reiterate that we may not consider the transcript of the adjudicatory hearing in Marion County as the transcript did not comply with App.R. 9. The appellant bears the burden of producing an adequate record on

-17-

appeal, including any transcript required to evaluate the assignments of error. *State v. West*, 3d Dist. No. 2-06-04, 2006-Ohio-5834, ¶ 51, 53, citing App.R. 9(B); *State v. Estrada* (1998), 126 Ohio App.3d 553, 556. When such a transcript is not provided, this court is required to presume regularity of the trial court proceedings. Id. Accordingly, we must presume that the July 2008 hearing in the Marion County court was conducted with regularity and that Predmore was counseled by his father regarding his decision to waive counsel at this hearing, that the trial court complied with Juv.R. 29, and that the trial court discussed the waiver-of-counsel form with Predmore, ensuring his understanding of waiver and eliciting his preference regarding counsel. Additionally, we cannot find that Predmore did not knowingly waive counsel at this hearing based on the sole fact that the waiver of counsel form was incomplete. Predmore's fourth-degree misdemeanor charge was at issue at this hearing, which is not a "serious offense" requiring waiver of counsel to be in writing. See R.C. 2929.24(A)(4); *In re C.S.*, 115 Ohio St.3d 267, ¶ 109; *Brooke*, 113 Ohio St.3d 199, at paragraph two of the syllabus. Finally, the statement of rights and judgment entry filed in conjunction with the hearing indicate that the magistrate read Predmore a statement of rights, including his right to counsel, and that Predmore waived counsel. Consequently, we find that the Marion County court did not err in failing to appoint Predmore counsel at the adjudicatory hearing in case No. 8-09-04.

{¶34} Next, Predmore argues that in case No. 8-09-03, the Logan County court erred in failing to appoint counsel, because even though the court briefly discussed his rights in conjunction with case No. 8-09-05 at the combined adjudicatory hearing, the trial court did not advise him of his right to counsel in case No. 8-09-03, the record did not reflect that either parent counseled or advised him, and the court did not warn him about the dangers of self-representation. The state responds that Predmore and his father executed an advice-of-rights-and-procedures form at the initial hearing for case No. 8-09-03 and that at the combined adjudicatory hearing, Predmore was informed of his right to counsel in case No. 8-09-03 through the admonishments given in the burglary case.

{¶35} The record indicates that Predmore signed a form advising him of his right to counsel in January 2008 at the initial hearing in case No. 8-09-03; however, Predmore failed to produce a transcript of the initial hearing. As discussed in our analysis of case No. 8-09-04, when the defendant has failed to produce an adequate record on appeal, this court is required to presume regularity of the trial court proceedings. See App.R. 9(B); *West*; *Estrada*. Accordingly, we presume, as we did in case No. 8-09-04, that the initial hearing was conducted with regularity; that Predmore was counseled by his father regarding his decision to waive counsel; that the trial court complied with Juv.R. 29; and that the trial court discussed the form advising Predmore of his right to counsel to ensure his

understanding. However, our analysis does not end with that presumption. At the adjudicatory hearing in August 2008, for which this court was provided a valid transcript, held nearly seven months after the initial hearing, the trial court did not even mention Predmore's right to counsel in conjunction with case No. 8-09-03 but proceeded directly to adjudication. Even further, nothing in the record demonstrates that Predmore indicated his desire to waive counsel in case No. 8-09-03. This further differentiates case No. 8-09-03 from case No. 8-09-04, for which Predmore signed an advisement-of-rights form at the initial hearing and executed waiver-of-counsel forms at both the initial and the adjudicatory hearing, albeit incomplete. Here, Predmore merely signed an advisement-of-rights form at the initial hearing. The Supreme Court of Ohio has expressly noted the dangers presented when a juvenile signs a form advising him of his right to counsel but is not orally advised of the right and questioned on his wishes regarding the right. See *In re C.S.* Additionally, we do not find that Predmore was presumed to understand that the admonishments concerning his right to counsel in case No. 8-09-05 applied to case No. 8-09-03 as well, particularly given that he invoked his right to counsel in case No. 8-09-05. In light of the totality of circumstances present, as well as the strong presumption against waiver, we find that Predmore was not adequately advised of his right to counsel and the Logan County court erred in failing to appoint him counsel in case No. 8-09-03.

**{¶36}** Accordingly, we overrule Predmore's first assignment of error as to case No. 8-09-04 but sustain the assignment of error as to case No. 8-09-03.

*Assignments of Error Nos. II and III*

**{¶37}** In his second assignment of error, Predmore contends that his admission to delinquency in case No. 8-09-04 was not knowing, intelligent, and voluntary. Specifically, Predmore argues that the Marion County court failed to inform him of his rights pursuant to Juv.R. 29 before it allowed him to proceed unrepresented and accepted his admission. In his third assignment of error, Predmore contends that both the Marion and Logan County courts erred in failing to appoint him a guardian ad litem in cases Nos. 8-09-03 and 8-09-04. Specifically, Predmore argues that because he had a conflict of interest with his parents, both courts should have appointed him a guardian ad litem pursuant to R.C. 2151.281(A) and Juv.R. 4(B).

**{¶38}** Our disposition of Predmore's first assignment of error renders his second and third assignments of error moot as to case No. 8-09-03, and we decline to address them as to that case. App.R. 12(A)(1)(c).

**{¶39}** Regarding case No. 8-09-04, as we stated in our analysis of Predmore's first assignment of error, we may not consider the transcript of the adjudicatory hearing in Marion County as the transcript did not comply with App.R. 9. Consequently, we will presume regularity of the trial court proceedings

and presume that Predmore was informed of his rights pursuant to Juv.R. 29, and we find no conflict of interest with his parents evident from the record properly before this court. See *West*, 2006-Ohio-5834, at ¶ 51, 53, citing App.R. 9(B); *Estrada*, 126 Ohio App.3d at 556. Further, the record of statement of rights in the record provides that that the magistrate read Predmore a statement of his rights under Juv.R. 29.

{¶40} Accordingly, we overrule Predmore's second and third assignments of error.

*Assignment of Error No. IV*

{¶41} In his fourth assignment of error, Predmore contends that the Logan County court violated his right to due process when it adjudicated him delinquent of burglary in case No. 8-09-05 absent proof of every element of the charge against him by sufficient, competent, and credible evidence. Specifically, Predmore argues that the state failed to prove beyond a reasonable doubt that he acted with force, stealth, or deception to gain entry to the victim's home regarding the burglary charge. We disagree.

{¶42} When an appellate court reviews a record for sufficiency, " 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Monroe*, 105 Ohio

St.3d 384, 2005-Ohio-2282, ¶ 47, quoting *State v. Jenks* (1981), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds as stated in *State v. Smith* (1997), 80 Ohio St.3d 89, 1997-Ohio-355. Sufficiency is a test of adequacy, *State v. Henry*, 3d Dist No. 13-08-10, 2009-Ohio-3535, ¶ 20, and the question of whether evidence is sufficient to sustain a verdict is one of law. *State v. Robinson* (1955), 162 Ohio St. 486, superseded by state constitutional amendment on other grounds as stated in *Smith.*

{¶43} Predmore was adjudicated delinquent on one count of burglary in violation of R.C. 2911.12(A)(4), which provides:

> (A) No person, by force, stealth, or deception, shall do any of the following:
>
> * * *
>
> (4) Trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present.

{¶44} R.C. 2913.01(A) defines "deception" as "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact." Additionally, although the Revised Code does not define "stealth," the Supreme Court of Ohio has set

forth the proper definition as "'any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within a residence of another without permission.'" *State v. Ward* (1993), 85 Ohio App.3d 537, 540, quoting *State v. Lane* (1976), 50 Ohio App.2d 41, 47. See also *State v. Stone* (Nov. 10, 1999), 5th Dist. No. 1999AP030012, 1999 WL 1072199; *State v. LaFrance*, 6th Dist. No. WD-04-025, 2005-Ohio-4882; *State v. Stewart*, 8th Dist. No. 86396, 2006-Ohio-1072.

**{¶45}** Here, Predmore argues that the state failed to prove beyond a reasonable doubt that he acted with force, stealth, or deception to gain entry to the victim's home regarding the burglary charge. He argues that there was no evidence heard as to how he entered the home, even though Kennedy testified that he was in her home when she returned from driving her trash to the curb. However, evidence was heard that Predmore approached the 90-year-old victim, asking if he could do yard work for her. When the victim loaded trash cans into her car to drive around to the curb, as she customarily did, and returned ten to 15 minutes later, Predmore was in her home walking down the stairs from the second floor. The victim never invited Predmore into her home. Predmore told the victim he had been using the restroom and told the investigating officer that the victim had invited him into the home to receive his check for the yard work. We find that this constituted sufficient evidence to establish that Predmore planned to

burglarize the victim under the guise of assisting her with yard work and waited to enter her home until she departed to move her trash cans. Thus, Predmore engaged in a "secret, sly or clandestine act to avoid discovery and to gain entrance into" Kennedy's home without her permission. See *Lane*, 50 Ohio St.2d at 47.

{¶46} Accordingly, we overrule Predmore's fourth assignment of error.

*Assignment of Error No. V*

{¶47} In his fifth assignment of error, Predmore contends that he was denied effective assistance of counsel in case No. 8-09-05. Specifically, Predmore argues that trial counsel was ineffective for failing to move to dismiss the burglary charge because the state failed to prove he acted with force, stealth, or deception, and for failing to zealously advocate on his behalf. We disagree.

{¶48} An ineffective-assistance-of-counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result. *State v. Bradley* (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that but for counsel's errors, the outcome at trial would have been different. Id. at paragraph three of the syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. *State v. Waddy* (1992), 63 Ohio St.3d 424, 433, superseded by

constitutional amendment on other grounds as recognized by *State v. Smith* (1997), 80 Ohio St.3d 89, 103.

**{¶49}** Furthermore, the court must look to the totality of the circumstances and not isolated instances of an allegedly deficient performance. *State v. Malone* (Dec. 13, 1989), 2d Dist. No. 10564, 1989 WL 150798. "Ineffective assistance does not exist merely because counsel failed 'to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it.'" Id. at 4, quoting *Smith v. Murray* (1986), 477 U.S. 527, 535.

**{¶50}** In our analysis of Predmore's fourth assignment of error, we concluded that sufficient evidence was presented to demonstrate that he acted with force, stealth, or deception to gain entry to the victim's home in conjunction with the burglary offense. Thus, we do not find that trial counsel was ineffective for failing to move to dismiss the charge because the state failed to prove this element. Additionally, although Predmore baldly asserts that trial counsel failed to zealously advocate on his behalf, he points to no other alleged errors of counsel, and we find none apparent from the record.

**{¶51}** Accordingly, we overrule Predmore's fifth assignment of error.

**{¶52}** Having found error prejudicial to the appellant, in the particulars assigned in his first assignment of error regarding case No. 8-09-03, we reverse Predmore's adjudication as a delinquent child for petty theft and one of his 90-day

Case No. 8-09-03, 04, 05

commitments to JDC. Having found no error prejudicial to the appellant, in the particulars assigned regarding case Nos. 8-09-04 and 8-09-05, we affirm Predmore's adjudication as a delinquent child for illegal possession of drug paraphernalia and burglary and, his other 90-day commitment to JDC and six-month minimum commitment to DYS.

Judgment reversed and cause remanded as to case No. 8-09-03.

Judgments affirmed as to case Nos. 8-09-04 and 8-09-05.

WILLAMOWSKI, P.J., concurs.

SHAW, J., concurs in judgment only.