[Cite as *State v. Hahn*, 2021-Ohio-3789.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                       CASE NO. 7-21-02

      v.

JUSTIN HAHN,                            O P I N I O N

      DEFENDANT-APPELLANT.

---

Appeal from Henry County Common Pleas Court
Trial Court No. 20 CR 0134

Judgment Affirmed

Date of Decision:  October 25, 2021

---

APPEARANCES:

    *Autumn D. Adams* for Appellant

    *Gwen Howe-Gebers* for Appellee

**MILLER, J.**

{¶1} Defendant-appellant, Justin Hahn, appeals the February 22, 2021 judgment of sentence of the Henry County Court of Common Pleas. For the reasons that follow, we affirm.

### I. Facts & Procedural History

{¶2} On November 8, 2020, Hahn entered a Walmart store in Napoleon, Ohio with his face and head partly obscured by a cloth facemask and a baseball cap. Due to an earlier theft incident at a Walmart store in Holland, Ohio, Hahn had been issued a trespass order barring him from entering "all Walmart and Sam's Club Property." Hahn was thus not lawfully permitted to enter the Napoleon Walmart.

{¶3} Inside the store, Hahn proceeded to the electronics department, where he selected a Vizio brand television and placed it into a shopping cart. Hahn then pushed the cart to a side aisle in the housewares department and attempted to remove the security device from the television. Failing to take off the security device, Hahn left the cart with the television, walked to the hardware department, and retrieved a pair of wire cutters. After returning from the hardware department, Hahn guided the shopping cart to a different side aisle in the housewares department. There, Hahn succeeded in using the wire cutters to remove the security device from the television. Having set off an audible alarm while removing the security device, Hahn took the television from the shopping cart and hurried out of the store. Hahn

loaded the television into his vehicle and drove away. He was not apprehended that day.

**{¶4}** On November 13, 2020, Detective Jamie Mendez of the City of Napoleon Police Department received a phone call from Henry County Assistant Prosecuting Attorney Katie Nelson. Nelson advised Detective Mendez that she was in a video conference with Hahn. She told Detective Mendez there was an active warrant for Hahn's arrest and that he was in Room 24 at the Napoleon Motor Inn. After confirming that there was indeed an active warrant for Hahn's arrest, which was issued in a misdemeanor case unrelated to the November 8, 2020 incident at the Napoleon Walmart, Detective Mendez and three other law enforcement officers went to the Napoleon Motor Inn to arrest Hahn.

**{¶5}** When they arrived, they knocked and announced themselves at the door to Room 24, but received no answer. Detective Mendez called Nelson to verify they were knocking on the correct door. Nelson informed Detective Mendez that during the video conference with Hahn, she could hear Detective Mendez and the other officers knocking on the door to Hahn's room and talking amongst themselves. She also told Detective Mendez that Hahn had walked away from his video camera. At that point, Detective Mendez located the manager of the Napoleon Motor Inn, who confirmed that Hahn was residing in Room 24. Detective Mendez explained to the manager that there was an active warrant for Hahn's arrest and that he needed to

enter Hahn's room. Using a key provided by the manager, Detective Mendez and the other officers entered Hahn's motel room and found him in the bathroom. Hahn was then placed under arrest.

{¶6} Inside of Hahn's motel room, Detective Mendez and the other officers observed a number of items in plain view, including a Vizio brand television that was mounted on the wall in a corner of the room. Detective Mendez was aware that a Vizio brand television had recently been stolen from the Napoleon Walmart, and he asked the manager of the motel whether the television belonged to the motel. The manager advised that the television was bigger than the televisions ordinarily provided by the motel and that the motel did not own the television. The officers then took photographs of the room and of the television. Other than Hahn, nothing was seized from the motel room.

{¶7} On November 25, 2020, the Henry County Grand Jury indicted Hahn on one count of burglary in violation of R.C. 2911.12(A)(3), a third-degree felony. On December 2, 2020, Hahn appeared for arraignment and entered a plea of not guilty to the count in the indictment.

{¶8} A jury trial was held on February 17, 2021. At the close of the State's evidence, Hahn moved for a judgment of acquittal pursuant to Crim.R. 29, which the trial court denied. The jury subsequently found Hahn guilty of burglary as charged in the indictment.

{¶9} A sentencing hearing was held on February 19, 2021, at which the trial court sentenced Hahn to 24 months in prison. The trial court filed its judgment entry of sentence on February 22, 2021. That same day, Hahn timely filed a notice of appeal. He raises three assignments of error for our review.

## II. Assignments of Error

**1.    The search of Appellant's motel room was made in violation of Appellant's right to be free from unreasonable searches and seizures.**

**2.    Appellant suffered ineffective assistance of counsel.**

**3.    The State failed to prove sufficient evidence to sustain a conviction of burglary.**

We consider Hahn's assignments of error in the order presented, but for ease of discussion, we consider Hahn's first and second assignments of error together.

## III. Discussion

**A.    First and Second Assignments of Error:  Should the evidence generated from the entry into and search of Hahn's motel room be suppressed and was his trial counsel ineffective for failing to file a motion to suppress this evidence?**

{¶10} In his first assignment of error, Hahn maintains the entry into and search of his motel room violated his Fourth Amendment rights because "officers did not have a search warrant, did not have [his] permission to enter the motel room, and there were no exigent circumstances that would waive the warrant requirement." Hahn argues that all evidence produced by the search of his motel room must therefore "be suppressed as fruit of the poisonous tree." However, in the

proceedings below, Hahn did not file a motion to suppress. "Crim.R. 12(C)(3) requires a defendant file a motion to suppress evidence with the trial court prior to trial, and failure to do so 'shall constitute waiver of the defenses or objections' for purposes of trial." *Columbus v. Cort*, 10th Dist. Franklin No. 19AP-425, 2020-Ohio-1467, ¶ 12, quoting Crim.R. 12(H). Accordingly, Hahn has waived all challenges to the constitutionality of the search of his motel room, other than plain error. *Id.* at ¶ 12-13; *State v. Porter*, 2d Dist. Montgomery No. 28288, 2019-Ohio-4482, ¶ 22-23; *Marion v. Brewer*, 3d Dist. Marion No. 9-08-12, 2008-Ohio-5401, ¶ 10. "The burden of demonstrating plain error is on the party asserting it." *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 16. Hahn, however, has failed to even develop a plain-error argument on appeal, and in this instance, we decline to fashion one for him. *See State v. Rottman*, 6th Dist. Lucas No. L-20-1061, 2021-Ohio-1618, ¶ 7.

{¶11} Nevertheless, in Hahn's second assignment of error, we are presented with an opportunity to consider the issues raised by Hahn in his first assignment of error, albeit from a slightly different perspective. Hahn's second assignment of error is premised in part on the very thing that doomed his first assignment of error—his trial counsel's failure to file a motion to suppress evidence. Hahn claims that because the entry into and search of his motel room were plainly unconstitutional, he "suffered ineffective assistance of counsel when his trial

attorney failed to file a motion to suppress or even cite the intrusion during a Criminal Rule 29(A) motion."

{¶12} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 689. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance of counsel. *State v. Frazier*, 61 Ohio St.3d 247, 255 (1991). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989).

{¶13} Prejudice results when "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bradley* at 142, quoting *Strickland* at 694. "'A reasonable probability

is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Strickland* at 694.

{¶14} "The failure to file a motion is not per se ineffective assistance of counsel." *State v. Costell*, 3d Dist. Union No. 14-15-11, 2016-Ohio-3386, ¶ 161. To sustain a claim of ineffective assistance of counsel based on counsel's failure to file a particular motion, the defendant must first specify the basis for the motion that counsel supposedly should have filed. *See State v. Phelps*, 5th Dist. Delaware Nos. 18 CAA 02 0016 and 18 CAA 02 0017, 2018-Ohio-4738, ¶ 13. Then, the "'defendant must show that the motion had a reasonable probability of success.'" *State v. Dahms*, 3d Dist. Seneca No. 13-16-16, 2017-Ohio-4221, ¶ 101, quoting *State v. Ferguson*, 10th Dist. Franklin No. 16AP-307, 2016-Ohio-8537, ¶ 11; *Phelps* at ¶ 13. If the defendant fails to demonstrate a reasonable probability that the proposed motion would have been granted, counsel is presumed to have been effective since the filing of the motion would have been a "futile act," which the law does not require counsel to undertake. *State v. Leu*, 6th Dist. Lucas No. L-17-1265, 2019-Ohio-3404, ¶ 47; *State v. Cottrell*, 4th Dist. Ross Nos. 11CA3241 and 11CA3242, 2012-Ohio-4583, ¶ 20. Additionally, even if the defendant succeeds in establishing a reasonable probability of success on the proposed motion, he still "must further show that there is a reasonable probability that the outcome [of the trial] would have been different if the motion had been granted * * *." *State v.*

*Blanton*, 4th Dist. Adams Nos. 19CA1096 and 19CA1097, 2020-Ohio-7018, ¶ 50, *appeal allowed*, 162 Ohio St.3d 1444, 2021-Ohio-1398; *Phelps* at ¶ 13.

{¶15} Hahn contends that a motion to suppress the evidence obtained through the entry into and search of his motel room would have been successful because it is obvious that Detective Mendez and the other officers were not legally authorized to enter his motel room. Hahn accurately observes that the officers did not have a search warrant and that they did not have his consent to enter his room. For the sake of Hahn's argument, we will also assume Hahn is correct that there were no exigent circumstances justifying the entry into his room. Nevertheless, Hahn either downplays or completely ignores the likely source of the officers' constitutional authority to enter his motel room—the misdemeanor arrest warrant.

{¶16} "Generally, officers may not lawfully make a warrantless and nonconsensual entry into a suspect's home to make an arrest." *Alley v. Bettencourt*, 134 Ohio App.3d 303, 312 (4th Dist.1999), citing *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371 (1980). This rule "'appl[ies] with equal force to a properly rented hotel room during the rental period.'" *State v. Chavez*, 2d Dist. Montgomery No. 27840, 2018-Ohio-4351, ¶ 21, quoting *United States v. Junkman*, N.D. Iowa No. CR96-4033, 1997 WL 33559171, *3 (June 24, 1997). Nonetheless, in *Payton*, the Supreme Court of the United States held that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in

which the suspect lives when there is reason to believe the suspect is within." *Payton* at 603. "Accordingly, pursuant to *Payton*, an arrest warrant is sufficient to enter a person's residence to effectuate the warrant if the police have reason to believe that the suspect lives in the home and is in fact at the home at the time the arrest warrant is executed." *State v. Zerucha*, 11th Dist. Ashtabula No. 2015-A-0031, 2016-Ohio-1300, ¶ 13. Importantly, because an arrest warrant is issued by a neutral judicial officer based upon a finding of probable cause regardless of whether the warrant is for a misdemeanor or a felony, there is "no basis to conclude that a misdemeanor arrest warrant provides less authorization to enter a suspect's home to arrest that suspect than a felony arrest warrant provides." *State v. Hinshaw*, 2d Dist. Montgomery No. 27985, 2018-Ohio-4226, ¶ 21; *see Shreve v. Jessamine Cty. Fiscal Court*, 453 F.3d 681, 683, 688-689 (6th Cir.2006) ("[W]e read [*Payton*] to permit forcible entry into the home to search for and arrest a suspect pursuant to a valid arrest warrant, regardless of whether the arrest is for a misdemeanor or a felony."); *United States v. Hall*, W.D.N.C. No. 3:09cr19, 2009 WL 3165458, *4 (Sept. 29, 2009) (collecting cases holding that a valid misdemeanor arrest warrant permits entry into a residence to make an arrest).

{¶17} In this case, the arrest warrant was never made part of the record. However, Hahn does not challenge the validity of the arrest warrant and in fact urges us to "proceed under the assumption that the arrest warrant was valid." Since it is

Hahn's burden to demonstrate that he received ineffective assistance of counsel and we find nothing in the record suggesting the arrest warrant was invalid, we accept Hahn's invitation.

{¶18} Assuming that the arrest warrant was valid, we need only ask whether Detective Mendez and the other officers had reason to believe (1) that Hahn resided in Room 24 at the Napoleon Motor Inn and (2) that Hahn was in fact in the room at the time the arrest warrant was executed. On both counts, we answer in the affirmative. Based on Nelson's report that Hahn was in Room 24 during the video conference and on the manager's confirmation that Hahn was staying in Room 24, Detective Mendez and the other officers had ample reason to believe that Hahn resided in Room 24. *See United States v. Mullikin*, 534 F.Supp.2d 734, 739 (E.D.Ky.2006) (where officers entered a motel room to effectuate a misdemeanor arrest warrant, the officers had reason to believe that the suspect was staying in the motel room based on an anonymous call that the suspect was staying at the motel, which was confirmed by the motel's manager prior to the officers' entry). In addition, based on Nelson's statement that she could hear Detective Mendez and the other officers knocking on Hahn's door and announcing their presence while she talked to Hahn during the video conference, there was reason to believe that Hahn was actually in Room 24 when Detective Mendez and the other officers went to

serve the arrest warrant. Thus, from the record before us, we are satisfied that the entry into Hahn's motel room did not infringe Hahn's Fourth Amendment rights.

{¶19} Nor were Hahn's Fourth Amendment rights violated when Detective Mendez and the other officers observed the Vizio brand television or when they photographed Hahn's room. "'Generally, the police are free to observe whatever may be seen from a place where they are entitled to be.'" *State v. Buzzard*, 112 Ohio St.3d 451, 2007-Ohio-373, ¶ 15, quoting *United States v. Fields*, 113 F.3d 313, 321 (2d Cir.1997). "[I]f a police officer is lawfully on a person's property and observes objects in plain or open view, no warrant is required to look at them." *Id.* at ¶ 16. "[M]ere observation of an object in plain view does not constitute a search * * *." *Id.* at ¶ 17. In serving the arrest warrant, Detective Mendez and the other officers attained a lawful vantage point inside of Hahn's motel room. From that lawful vantage point, they were free to observe whatever objects happened to be in plain view. The mere observation and inspection of the television in plain view did not constitute an independent search because it "produced no additional invasion of [Hahn's] privacy interest." *Arizona v. Hicks*, 480 U.S. 321, 325, 107 S.Ct. 1149 (1987). Likewise, taking photographs of Hahn's room and of the television did not amount to an unconstitutional "seizure" because "the recording of visual images of a scene by means of photography * * * does not 'meaningfully interfere' with any possessory interest." *Bills v. Aseltine*, 958 F.2d 697, 707 (6th Cir.1992); *see United*

*States v. Mancari*, 463 F.3d 590, 596 (7th Cir.2006) (following *Bills*). Provided that they occupy a lawful vantage point, law enforcement officers can "record by photography scenes presented to their plain view." *Bills* at 707; *see United States v. Espinoza*, 641 F.2d 153, 167 (4th Cir.1981).

{¶20} In sum, we conclude that Detective Mendez and the other officers did not violate Hahn's Fourth Amendment rights when they entered into Hahn's motel room, arrested him and photographed what they observed in plain view in the room. Consequently, Hahn cannot demonstrate that there is a reasonable probability that his proposed motion to suppress would have been granted. Because it is not likely that Hahn's proposed suppression motion would have succeeded, we conclude that his trial counsel's failure to file the proposed motion does not constitute deficient performance. In this respect, Hahn has failed to establish that he received ineffective assistance of counsel.

{¶21} As a final matter, we note that Hahn also maintains that his trial counsel was ineffective for failing to use his Crim.R. 29 motion to address the constitutionality of the entry into and search of the motel room. However, even if Hahn's Fourth Amendment rights had been violated, thereby rendering the evidence obtained from his motel room inadmissible, it would not have been proper for Hahn's trial counsel to raise these matters in a Crim.R. 29 motion. Crim.R. 29 provides for "a motion for judgment of acquittal and is used when the evidence

presented is insufficient to sustain a conviction. It is not a method for challenging evidence already admitted * * *." *State v. Stuber*, 3d Dist. Allen No. 1-02-66, 2003-Ohio-982, ¶ 11; *see State v. Cochenour*, 4th Dist. Ross No. 1371, 1989 WL 11925, *1 (Feb. 16, 1989) (concluding that the legality of the defendant's arrest was not an issue to be addressed in a Crim.R. 29 motion because "Crim.R. 29(A) motions challenge the sufficiency of the evidence, not the admissibility of the evidence"). Hahn's trial counsel cannot have performed deficiently by neglecting to challenge the admissibility of evidence using a procedural rule that is not designed for such challenges. Here too, Hahn has failed to demonstrate that he received ineffective assistance of counsel.

{¶22} Hahn's first and second assignments of error are overruled.

**B.      Third Assignment of Error:  Is Hahn's burglary conviction supported by sufficient evidence?**

{¶23} In his third assignment of error, Hahn argues the State did not present sufficient evidence to sustain his burglary conviction. Hahn contends the evidence is insufficient to prove that he used "force, stealth, or deception" to trespass in the Napoleon Walmart.

{¶24} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio

St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33.

{¶25} Hahn was indicted on one count of burglary in violation of R.C. 2911.12(A)(3), which provides that "[n]o person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense." Hahn does not dispute that the State presented sufficient evidence that he trespassed in the Napoleon Walmart, that the Napoleon Walmart qualifies as an occupied structure, or that he had purpose to commit a criminal offense in the Napoleon Walmart. Instead, Hahn focuses solely on the State's evidence that he used "force, stealth, or deception." Accordingly, we limit our analysis to this element alone.

{¶26} "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). "'Force' is satisfied by 'any effort physically exerted.'" *State v. Johnson*, 2d Dist. Montgomery No. 26961, 2017-Ohio-5498, ¶ 21, quoting *State v. Snyder*, 192 Ohio App.3d 55, 2011-Ohio-175, ¶ 18 (9th Dist.). "There is no definition of 'stealth' provided in the Revised Code[,]" but this court has defined "stealth" as "'any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within a residence of another without permission.'" *State v. Ward*, 85 Ohio App.3d 537, 540 (3d Dist.1993), quoting *State v. Lane*, 50 Ohio App.2d 41, 47 (10th Dist.1976). Finally, we have relied on R.C. 2913.01(A) to define the word "deception" as it is used in R.C. 2911.12. *In re Predmore*, 187 Ohio App.3d 100, 2010-Ohio-1626, ¶ 44 (3d Dist.). R.C. 2913.01(A) defines "deception" as "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact."

{¶27} In arguing that the State did not introduce sufficient evidence to prove he used force, stealth, or deception to trespass in the Napoleon Walmart, Hahn focuses on the State's theory that "wearing a hat and a state-mandated mask over

his face was stealth." Hahn contends that because the "mask was mandated by the State of Ohio and the store"[1] and hats are "a common piece of attire to wear, especially when it is cold out," the State did not prove that he used stealth. We disagree.

{¶28} Evidence that a defendant employed a hat, mask, hood, or other article of clothing to conceal their identity can be used to establish that the defendant used stealth. *See State v. Vidal*, 11th Dist. Portage No. 2016-P-0018, 2016-Ohio-8115, ¶ 28 (concluding that sufficient evidence was presented to prove the defendant used stealth where, among other things, the defendant and his accomplice were "wearing hoodies and hats/bandanas that could be used to cover their faces"); *State v. Steele*, 12th Dist. Preble No. CA2014-07-005, 2015-Ohio-1705, ¶ 27 (holding that the evidence established the defendant "used stealth when he cinched his hood over his face to hide his identity"); *State v. Hughes*, 5th Dist. Delaware No. 93CA-A-09-034, 1994 WL 527952, *4 (Aug. 22, 1994) ("[T]he fact that [the defendant's accomplices] wore masks contributes to the stealth element."). It is true that the State Interim Health Director's order required Hahn to wear a facial covering to enter publicly-accessible buildings such as the Napoleon Walmart. Thus, unlike

[1] On July 23, 2020, in response to the COVID-19 pandemic, the Interim Director of the Ohio Department of Health issued an order mandating that, except as otherwise provided in the order, "all individuals in the State of Ohio shall wear facial coverings at all times when * * * [i]n any indoor location that is not a residence." Ohio Department of Health, *Director's Order for Facial Coverings throughout the State of Ohio*, https://coronavirus.ohio.gov/static/publicorders/Directors-Order-Facial-Coverings-throughout-State-Ohio.pdf (accessed Sept. 24, 2021). This order has since been rescinded, but it remained in effect on November 8, 2020.

most cases in which the defendant used some item of clothing to conceal his identity, Hahn was obligated to don a primary component of his disguise.

{¶29} Yet, Hahn's disguise comprised more than just his cloth facemask. Hahn also wore a baseball cap, which he was not legally required to wear to enter the Napoleon Walmart. By itself, the baseball cap obscured identifiable features of Hahn's face and head that were not hidden by his facemask alone. These features were readily apparent in a photograph of Hahn taken several days earlier when he was observed in a different Walmart store in Wauseon, Ohio. For example, Hahn had a readily identifiable haircut. When combined, Hahn's baseball cap and facemask covered the majority of his face and head. Therefore, viewing the evidence in a light most favorable to the prosecution, a reasonable trier of fact could find that Hahn used the baseball cap to improve the disguise already afforded him by his state-mandated facemask and that, by wearing the facemask and baseball cap together, Hahn acted in a "secret, sly, or clandestine" manner to avoid detection as he entered the Napoleon Walmart.

{¶30} Moreover, the State introduced evidence that Hahn engaged in additional "secret, sly, or clandestine" acts while trespassing inside of the Napoleon Walmart. Here, we note that the element of "trespass" in R.C. 2911.12 encompasses both "entering" *and* "remaining" on the land or premises of another without privilege to do so. *See* R.C. 2911.10 and 2911.21(A)(1). Thus, provided that the

other elements of burglary are satisfied, a conviction for burglary can be sustained on evidence that a defendant used stealth to remain in an occupied structure. In this case, the evidence showed that Hahn moved between and stationed himself within otherwise empty side aisles as he attempted to remove the security device from the television. Viewing the evidence in a light most favorable to the prosecution, a reasonable trier of fact could find that Hahn deliberately avoided the main aisles filled with shoppers and Walmart associates in order to evade discovery and remain in the Napoleon Walmart for as long as it took him to remove the security device and abscond with the television.

{¶31} Finally, apart from whether the evidence is sufficient to prove that Hahn used stealth to enter or remain in the Napoleon Walmart, there was evidence presented supporting that Hahn used force to enter the store. At trial, Evan Vollmar, an asset protection associate at the Napoleon Walmart, testified Hahn entered the store by triggering and walking through automatic doors at the front entrance. (Feb. 17, 2021 Tr. at 149-150). In a recent case, evidence that a person "activat[ed] the door sensors when she walked into [a Kohl's store] * * * and triggered the two sliding doors to open and stay open as she passed through" was found to be sufficient to establish the "force" element of burglary. *State v. Duke*, 6th Dist. Wood No. WD-20-001, 2021-Ohio-1552, ¶ 34-35. Therefore, it is also possible for a

reasonable trier of fact to have found that Hahn used force to enter the Napoleon Walmart.

{¶32} In conclusion, viewing the evidence in a light most favorable to the prosecution, any reasonable trier of fact could find beyond a reasonable doubt that Hahn used either force or stealth to trespass in the Napoleon Walmart. Accordingly, we conclude that Hahn's burglary conviction is supported by sufficient evidence.

{¶33} Hahn's third assignment of error is overruled.

## IV. Conclusion

{¶34} For the foregoing reasons, Hahn's assignments of error are overruled. Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Henry County Court of Common Pleas.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**