[Cite as *State v. Tesyk*, 2014-Ohio-180.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | CASE NO. 13 MA 3 |
| V. | ) | |
| | ) | OPINION |
| JOHN TESYK, | ) | |
| | ) | |
| DEFENDANT-APPELLLANT. | ) | |

CHARACTER OF PROCEEDINGS: Criminal Appeal from Court of Common Pleas of Mahoning County, Ohio Case No. 11CR1381

JUDGMENT: Reversed and Appellant Discharged

APPEARANCES:
For Plaintiff-Appellee Paul Gains
Prosecutor
Ralph Rivera
Assistant Prosecutor
21 W. Boardman St., 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellant Attorney John Falgiani, Jr.
8872 East Market St.
Warren, Ohio 44484

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: January 16, 2014

DONOFRIO, J.

{¶1} Defendant-appellant, John Tesyk, appeals from a Mahoning County Common Pleas Court judgment convicting him of breaking and entering, following a jury trial.

{¶2} In the early morning hours, of December 11, 2011, Allen Donatelli, was working at his restaurant/bar in downtown Struthers when he noticed appellant outside of a building located at 118 Bridge Street. The building was across the street from Donatelli's restaurant.

{¶3} Nick's Department Store used to occupy the building. But in 2008, Kenneth Bigley purchased the building and its contents at auction. On the night in question, the building was in the process of being remodeled.

{¶4} Donatelli knew who appellant was. He saw appellant walk around from the side of the building and approach the doorway. Then Donatelli could no longer see appellant. He called the Struthers Police and reported that appellant walked into the building.

{¶5} Struthers Police Captain Patrick Bundy and Officer Richard Craig, along with two other officers, responded to the call. According to the officers, the building's door was slightly ajar when they arrived and it did not appear that force had been used to enter it. The officers entered the building. Captain Bundy called out to appellant by name several times. The last time the Captain called appellant's name, Captain Bundy identified himself as a police officer and appellant came out from another room of the building. The officers found appellant's bag with some clothing items with tags from Nick's Department Store. They arrested appellant.

{¶6} A Mahoning County Grand Jury indicted appellant on one count of breaking and entering, a fifth-degree felony in violation of R.C. 2911.13(A)(C).

{¶7} The matter proceeded to a jury trial. The jury found appellant guilty as charged. The trial court subsequently sentenced appellant to ten months in prison.

{¶8} Appellant filed a timely notice of appeal on January 4, 2013. The trial court denied appellant's motion to stay his sentence. But on appellant's motion to this court, we stayed his sentence pending this appeal.

{¶9}  Appellant raises four assignments of error.  We will address the assignments of error out of order for ease of discussion.

{¶10}  Appellant's third assignment of error states:

THE TRIAL COURT ERRED BY IMPROPERLY INSTRUCTING THE JURY ON THE INCORRECT DEFINITION OF THE TERM "STEALTH" AS USED IN ORC.2913.11.

{¶11}  In instructing the jury on the element of "stealth" the court stated: "Stealth means any secret or sly act to avoid discovery and to gain entrance into or to remain within a structure of another without permission."  (Tr. 210).

{¶12}  Appellant concedes that his counsel did not object to this instruction. But he asserts his counsel was ineffective for failing to object.  He asserts he was prejudiced by the instruction because the only way the jury could have convicted him was to find that he used stealth to remain on the premises as opposed to that he used stealth to enter the premises.

{¶13}  Appellant argues the trial court did not properly define "stealth" for the jury. He asserts the court should have used the definition he alleges is set out in the Ohio Jury Instructions defining "stealth" for purposes of breaking and entering as "any secret or sly act to gain entrance."  Appellant asserts the court erred by giving the definition that included "remaining" on the premises because it is more broad than the Ohio Jury Instructions or the statute.

{¶14}  The Ohio Revised Code does not define "stealth."  But the appellate courts of this state have all used a definition that includes "remaining" on the premises as opposed to merely "entering" the premises, as the trial court instructed in this case.  See *State v. Davis*, 1st Dist. No. C-010477, 2002-Ohio-1982; *State v. Patton*, 2d Dist. No. 2011 CA 94, 2013-Ohio-961 ¶14; *In re Predmore*, 3d Dist. Nos. 8-09-03, 8-09-04, 8-09-05, 2010-Ohio-1626, ¶44; *In re Carter*, 4th Dist. Nos. 04CA15, 04CA16, 2004-Ohio-7285, ¶24; *State v. Stone*, 5th Dist. No. 1999 AP 030012, 1999 WL 1072199, *4 (Nov. 10, 1999); *State v. DeBoe*, 6th Dist. No. H-02-057, 2004-Ohio-

403, ¶66; *In re J.M.*, 7th Dist. No. 12 JE 3, 2012-Ohio-5283, ¶15; *State v. Isom*, 8th Dist. No 78959, 2001 WL 1671432, *4 (Nov. 29, 2001); *State v. Trikilis*, 9th Dist. Nos. 04CA0096-M, 04CA0097-M, 2005-Ohio-4266, ¶31; *State v. Lane*, 50 Ohio App.2d 41, 47, 361 N.E.2d 535 (10th Dist.1976); *State v. Sims*, 11th Dist. No. 2001-L-081, 2003-Ohio-324, ¶58; *State v. Lamberson*, 12th Dist. No. CA2000-04-012, 2001 WL 273806, *15 (Mar. 19, 2001).

**{¶15}** Appellant argues the cases that have used the above cited definition of stealth have been burglary cases and the courts have used the definition that the secret or sly act was done in order to "remain within a *residence* of another without permission." He contends that because the building here was not a residence, the definition does not apply.

**{¶16}** But several cases have applied the definition to breaking and entering cases replacing the word "residence" with "structure" as the trial court did here. See *Carter*, 4th Dist. Nos. 04CA15, 04CA16; *Davis*, 1st Dist. No. C-010477; *Sims*, 11th Dist. No. 2001-L-081; *Isom*, 8th Dist. No.78959.

**{¶17}** Moreover, the most current version of the Ohio Jury Instructions gives the identical definition: "'Stealth' means any secret or sly act to avoid discovery and to gain entrance into or to remain within a structure of another without permission." 2 CR Ohio Jury Instructions 511.13(A).

**{¶18}** Therefore, the trial court did not err in instructing the jury on the element of "stealth." Accordingly, appellant's third assignment of error is without merit.

**{¶19}** Appellant's fourth assignment of error states:

> APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

**{¶20}** In his fourth assignment of error, appellant contends his trial counsel was ineffective for failing to object to the "stealth" jury instruction discussed in his third assignment of error.

**{¶21}** To prove an allegation of ineffective assistance of counsel, the

appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. *Id.* To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different. *Bradley*, at paragraph three of the syllabus.

{¶22} Appellant bears the burden of proof on the issue of counsel's effectiveness. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In Ohio, a licensed attorney is presumed competent. *Id.*

{¶23} Because the trial court properly instructed the jury on the definition of "stealth," there was no reason for appellant's counsel to object. Therefore, counsel was not ineffective for failing to object.

{¶24} Accordingly, appellant's fourth assignment of error is without merit.

{¶25} Appellant's first assignment of error states:

THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE JURY'S VERDICT FINDING APPELLANT GUILTY OF BREAKING AND ENTERING.

{¶26} Appellant argues that his conviction was not supported by sufficient evidence. He claims the state failed to present any evidence that he entered the premises by force, stealth, or deception. Appellant claims that he is somewhat "notorious" in the Struthers community because he rides his bicycle all around town.[1] He points out Donatelli recognized him right away. He also points out Donatelli testified that appellant looked right at him. Appellant argues that if he were trying to be stealthy, he would have attempted to conceal his face or fled instead of walking

---

1 Appellant makes this assertion several times in his brief, but these "facts" were not in evidence and, therefore, we cannot consider them.

right into the building. Appellant states he was not wearing a mask and came out to the police when they called him by name. He argues a reasonable juror could not assume that he was hiding simply because he was not in the same room of the building as the police when they entered. Moreover, appellant asserts there was no evidence of force because the building's owner testified that the door may have been open or unlocked and the reporting police officer indicated no force was used to enter the building. Thus, while appellant concedes his actions may have constituted criminal trespass, he urges that they did not constitute breaking and entering.

{¶27} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In essence, sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113.

{¶28} The jury convicted appellant of breaking and entering in violation of R.C. 2911.13(A), which provides: "No person by force, stealth, or deception, shall trespass in an unoccupied structure, with purpose to commit therein any theft offense * * * or any felony."

{¶29} The evidence at trial was as follows.

{¶30} Bigley testified that he owned the building at 118 Bridge Street. (Tr. 136). At the time in question, Bigley was having remodeling work done in the building. (Tr. 137). Prior to his purchasing the building, Nick's Department Store had occupied it. (Tr. 141). Nick's was out of business when Bigley purchased the building. (Tr. 142). He purchased the building and its contents at auction. (Tr. 137-138). Bigley did not give appellant permission to enter the building or to remove any

property from it. (Tr. 138). When asked about the door to the building, Bigley testified:

Q       Do you have any knowledge as to whether or not on December 11th, 2011 if the door - - front door was left open or not?

A       I do not know. Normally it was locked, but people were in and out. They were working, storing things, that type of thing, and [the door] may or may not have been locked. I'm not sure.

Q       Could it have been open, left open?

A       Left unlocked or - -

Q       Left open.

A       Possibly.

(Tr. 143).

{¶31} Donatelli testified that on the night in question he was working at his restaurant, which is across the street from the 118 Bridge Street building. (Tr. 150-151). He had stepped outside of his restaurant when he saw someone walk from the side of the building across the street into the front entryway of the building. (Tr. 152). Donatelli recognized the person he saw as appellant. (Tr. 153). Donatelli described the entryway of the building as a doorway where he saw appellant and then no longer saw him. (Tr. 153). When appellant was standing in the entryway, he looked at Donatelli. (Tr. 154). Donatelli did not actually see appellant enter the building. (Tr. 155). He then called the Struthers Police. (Tr. 153). Donatelli testified that although it was nighttime, he could see because of the lamps in front of his restaurant and because of the downtown lights. (Tr. 154). He noted that appellant had a backpack or duffel bag with him. (Tr. 156).

{¶32} Captain Bundy testified that when he got to the building at approximately 1:30 a.m., the door was slightly ajar. (Tr. 163, 168). He entered the dark building, along with three officers, and called to appellant by name. (Tr. 164). Captain Bundy called several times and the last time he identified himself as a police

officer. (Tr. 164). Appellant then stepped out from around the corner of another room. (Tr. 164). Captain Bundy stated it appeared as though appellant had been hiding and noted that he had "darker colored" clothing on. (Tr. 165). Captain Bundy testified appellant admitted to him that he had trespassed. (Tr. 165). Captain Bundy also stated the officers found appellant's bag sitting on the floor containing four shirts and three pairs of pants with Nick's Department Store labels on them. (Tr. 166-167). Appellant admitted that the bag belonged to him. (Tr. 168).

{¶33} On cross-examination, Captain Bundy stated appellant eventually came out when he called for him and did not try to hide or run from the officers. (Tr. 171). And Captain Bundy stated the door to the building did not appear to be forced open. (Tr. 176-177). He also stated he approved Officer's Craig's report, which indicated no force was used to enter the building. (Tr. 177-178).

{¶34} Officer Craig testified that when he arrived at the building he found the door open and entered the premises. (Tr. 182). He stated that Captain Bundy called out to appellant a couple of times and then appellant came out. (Tr. 183). The officer stated appellant had a flashlight in his hand and was wearing dark-colored clothing. (Tr. 183). He also testified appellant had a book bag containing articles of clothing from Nick's Department Store. (Tr. 184). Officer Craig admitted on cross-examination that he wrote in his report that no force was used to enter the building. (Tr. 185-186).

{¶35} The evidence in this case clearly established that appellant trespassed in an unoccupied building without permission to do so. However, what is not so clear is whether appellant entered the building by "force, stealth, or deception."

{¶36} As to the element of force, stealth, or deception, there was no evidence that appellant engaged in any type of deception. Thus, the state had to put forth evidence that appellant entered the building or remained in the building by use of either force or stealth.

{¶37} The Ohio Revised Code defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."

R.C. 2901.01(A)(1). And as discussed above, "stealth" is defined as "a secret, sly, or clandestine act to avoid discovery and gain entrance into or remain within a structure of another without permission." *Carter*, 4th Dist. Nos. 04CA15, 04CA16, at ¶24.

**{¶38}** Officer Craig admitted he reported that no force was used to enter the building. And Captain Bundy approved this report. Captain Bundy also testified that when he arrived the door was slightly ajar and it did not appear that force had been used to enter the building. Additionally, Bigley testified that while the door is normally locked, he had no idea whether it was locked on the night in question because various workers had been going in and out of the building. Bigley stated it was possible that the door had been left unlocked or even left open on the night in question. Moreover, Donatelli, the only eyewitness in this case, testified that he saw appellant in the entryway of the building but did not actually see him enter the building. Thus, he could not testify as to whether the door was open or closed, locked or unlocked, or whether appellant used force to gain entry. Additionally, Donatelli testified that appellant turned and looked at him before entering the building, which seems to be the opposite of acting stealthy.

**{¶39}** The state cites to several cases arguing the evidence was sufficient here. Yet these cases are distinguishable.

**{¶40}** For instance, the court in *State v. Hibbard*, 12th Dist. Nos. CA2001-12-276, CA2001-12-286, 2003-Ohio-707, ¶37, did find that entering a garage through an unlocked but closed door was sufficient to support the "force" element of breaking and entering. In *Hibbard*, the owner of the garage testified that the door was closed and the defendant told police that it was unlocked. *Id*. But in this case, the state did not present any evidence that the door to the building was closed. Bigley stated that the door was "normally" closed but he stated that it was possible that it had been left open from workers coming and going. And Donatelli did not actually see appellant enter the building nor did he testify that he saw the door either open or closed. Thus, *Hibbard* is distinguishable.

**{¶41}** And in *State v. Bossen*, 7th Dist. No. 83 J 9, 1984 WL 3763 (Oct. 3,

1984), the defendant was *not* convicted of breaking and entering solely on the evidence that he was seen outside of the residence and was later caught with items belonging to the home's owner as the state asserts. In addition to that evidence, the evidence established that appellant was with the co-defendant as they trespassed together over the burglarized premises and was seen leaving the premises with the co-defendant immediately after the commission of the burglary.  The co-defendant testified that he pleaded guilty to breaking and entering.  This court concluded there was sufficient evidence for the jury to convict the appellant due to aiding and abetting the co-defendant in the commission of breaking and entering.  Hence, *Bossen* is likewise distinguishable.

{¶42} The only remaining way the state could have proved the element of "force, stealth, or deception" is by offering evidence that appellant acted stealthy when he remained in the building.  The evidence was that the building was dark inside, it was approximately 1:30 a.m., appellant was dressed in dark clothes, and appellant did not reveal himself to police until they had called his name several times at which time he came out from around a corner.  But even taken as a whole and construed in the light most favorable to the prosecution, in this case, these facts alone do not rise to the level of stealthy behavior.  Appellant was clearly trespassing but there was no evidence that he was acting secretly or slyly to remain in the building.  Captain Bundy stated that he called appellant by name three or four times.  Captain Bundy did not identify himself as a police officer until the last time he called out to appellant.  Appellant then walked over to the police from another room in the building.  He did not try to hide or escape when police called him.  He simply walked over to them.  Appellant cannot be said to have been acting stealthy simply because he did not respond the first time the police called his name.  The state conceded as much at oral argument.

{¶43} In sum, even construing all of the evidence in the light most favorable to the prosecution, there is insufficient evidence to support appellant's breaking and entering conviction because the state did not prove that appellant acted with force,

stealth, or deception.  Accordingly, appellant's first assignment of error has merit.

**{¶44}** Appellant's second assignment of error states:

THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶45}** Given our resolution of appellant's first assignment of error, his second, assignment of error appear is moot.

**{¶46}** For the reasons stated above, the appellant's conviction is hereby reversed and the appellant is discharged.

Vukovich, J., concurs.

Waite, J., concurs.